## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO
## DENVER

**Civil Action No. 1:16-cv-00308**

**JORDAN JOHNSTON and BRITTANY LALONDE**

    **PLAINTIFFS,**

**v.**

**ELLICOT FIRE PROTECTION DISTRICT;**
**TAMMY ESPINOZA – GONZALEZ,** in both her personal and official capacity as a member of the board of directors of the District;
**DAVID HENLEY;** in both his personal and official capacity as a member of the board of directors of the District;
**ELLICOT VOLUNTEER FIRE DEPARTMENT;**
**NELLIE ROOP;** in her personal and official capacity as the chief of the District and department, and
**MICHAEL HENLEY,** in both his personal and official capacity as an employee of the District and officer of the department;

    **DEFENDANTS.**

---

## COMPLAINT AND JURY DEMAND

---

### INTRODUCTION

This action arises from the sexual misconduct of an employee of the Ellicott Fire Protection District (the "EFPD"), who is also a volunteer firefighter and at times relevant hereto a supervisor within the Ellicott Volunteer Fire Department (the "Department"). It further arises from the failure of the EFPD and Department leadership to put into place adequate policies and safeguards to prevent a hostile work environment and to adequately supervise and manage its

1

workforce.  Additionally, this action addresses the retaliation suffered by the Plaintiffs as a result of their making a complaint concerning the hostile work environment and sexual harassment to which they were subjected.

### JURISDICTION AND VENUE

1.    This action arises under the Constitution and the laws of the United States and is brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000, et. seq., and the laws of the State of Colorado.

2.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367.

3.    Jurisdiction is conferred upon the Court supporting Plaintiffs' claim for attorneys' fees and costs by 42 U.S.C. § 2000e-5(k).

4.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time the events giving rise to this litigation occurred.

### PARTIES

5.    Plaintiff Jordan Johnston, an individual, is a citizen of the State of Colorado.  He resides in an unincorporated portion of EL Paso County, Colorado.

6.    At the times relevant to this Complaint, Jordan Johnston was a volunteer with the EFPD/Department.  He has been with the EFPD since at least 2011.  He was in a common-law marriage relationship with Brittany LaLonde.

7.    Plaintiff Brittany LaLonde, an individual, is a citizen of the State of Colorado. She resides in an unincorporated portion of El Paso County, Colorado, although she is currently domiciled in the State of Texas.

8. At the times relevant to this Complaint, Brittany LaLonde was volunteer with the EFPD/Department. She has been with the EFPD since August 2012 as a member; and she was a participant in Department events pre-dating her membership. She was the common-law spouse of Jordan Johnston.

9. Plaintiffs were at all times relevant hereto members of the Department and uncompensated employees (volunteers) of the EFPD.

10. Defendant Ellicott Fire Protection District (the "EFPD") is a special district and political subdivision of the State of Colorado under Title 32.

11. Defendant Ellicott Volunteer Fire Department (the "Department") is an Unincorporated Non-Profit Association (see C.R.S. 7-30-101, et.seq.) that holds itself out as a charitable organization.

12. The Department, in fact, is not a charitable organization; it does not have a determination letter from the Internal Revenue Service.

13. The affairs and relationships between the EFPD and the Department are so interwoven and entwined that it is reasonable to conclude that the Department is an instrumentality of the EFPD.

14. Until late 2015, the Department did not have a separate tax identification number (EIN) from the EFPD. Historically the Department has made use of the EFPD's EIN when required or an EIN that according to the I.R.S was invalid.

15. The EFPD provides to the Department all equipment, facilities, and supplies necessary to effect the EFPD's purposes and responsibilities.

16. The EFPD and Department share common facilities and personnel.

17. Defendant David Henley is sued in his official and individual capacity. At all times relevant to this Complaint, he was a member of the Board of Directors of the EFPD and an officer within the Department.

18. Defendant Tammy Espinoza is sued in her official and individual capacity. At all times relevant to this Complaint, she was a member of the Board of Directors of the EFPD.

19. Defendant Nellie Roop was, at all times relevant to this Complaint, the Fire Chief of the Department and recognized by the Board of Directors of the EFPD under C.R.S. 32-1-1002(3) as its chief executive officer. She was and is both a volunteer and a compensated employee of the EFPD/Department. She is sued in her official and personal capacity.

20. Defendant Michael Henley was, at all times relevant to this Complaint, the Fire Captain of the Department and recognized by the Board of Directors of the EFPD as such. He was and is both a volunteer and a compensated employee of the EFPD/Department. He is sued in his official and personal capacities.

*COMPLIANCE WITH STATUTORY PREREQUISITES AND INEFFECTIVE ADMINISTRATIVE REMEDIES*

21. The Plaintiffs brought complaints regarding Michael Henley to Chief Roop and to the EFPD's Board of Directors on 11 June 2014.

22. After the October 2014 meeting of the EFPD's Board of Directors, the Chief and the Board of Directors declined to take any substantive remedial or punitive actions against Michael Henley or to remediate the retaliatory actions taken against them. Thereafter, the Plaintiffs sought legal counsel and pursued their claims.

4

23.    On 30 October 2014, the Plaintiffs gave notice of their claims to the EFPD under C.R.A. 24-10-109, in conformity with state law and for the preservation of any state claims thereunder.

24.    Additionally, in a separate mailing on 30 October 2014, the Plaintiffs made demand to the EFPD and the Department for the preservation of all electronic evidence.

25.    The Plaintiffs each filed an EEOC Form 5, Charge of Discrimination, with the Equal Employment Opportunity Commission (EEOC) on 1 November 2014.

26.    After the passage of nearly a year, and having not heard from the EEOC or its investigators, the Plaintiffs requested the issuance of a "Right to Sue Letter" from the Commission.

27.    On 11 December 2015, the Plaintiffs received a "Right to Sue Letter" from the EEOC.

28.    The Department and the EFPD are rife with nepotism and conflicts of interest such that although the Plaintiffs attempted to avail themselves of internal, administrative remedies, the Plaintiffs found the processes to be wholly ineffective.

29.    At all times relevant to this Complaint, the Department and the EFPD were essentially controlled by a single family, the Henleys.

30.    David Henley, the patriarch of the Henley family, sits on the EFPD's Board of Directors. David Henley is also the Maintenance Captain within the Department's leadership team. David Henley is the father of Nellie Roop (then Chief of the Department), Crystal Westcott (the Department's Medical Services Captain until 13 January 2015), Michael Henley (then the Department's Fire Services Captain; now its Chief), Peter Henley (Training Officer for

the Department), and Daniel Henley (a Department Lieutenant).

31.    Also on the Board of Directors and a volunteer within the Department is Lloyd Malone. His wife, Christy, is the Assistant/Deputy Chief of the Department and a full-time employee of the Board of Directors.

32.    The Malones are known as longtime family friends with the Henleys, going back so far that Nellie Roop was a principal babysitter for the Malones' children.

33.    Also on the Board of Directors is Defendant Tammy Espinoza-Gonzalez, a long-term (since secondary school) friend of Chief Roop and the Henley family.

34.    Chief Roop, Assistant Chief Malone and Captain Michael Henley were (and are still) full-time employees of the EFPD. Michael Henley serves as the full-time mechanic.

35.    Beyond the readily apparent nepotism, the Board of Directors and Department leadership have an ongoing conflict of interest in that members hold incompatible offices.

36.    At various times relevant to this Complaint, at least three members of the Board of Directors have also been active volunteers of the Department. Messrs. D. Gillis, D. Henley, and L. Malone and Ms. C. Malone were on the Board of Directors until a statutory prohibition of being an employee of a board of directors upon which one serves was highlighted.

37.    While serving as members of the Board of Directors, these individuals are statutorily required to supervise their appointed Chief. However, these same members are subordinate to the Chief in their operational roles within the Department. This particular dual service on the EFPD's Board of Directors and as operational members of the Department presents an inherent conflict of interest and roles. This conflict has been expressed in case law in Wyoming and in Colorado as to school boards. *See Haskins v. State, ex rel Harrington*, 516 P.2d

6

1171 (Wyo. 1973); *Montrose County Sch. District v. Lambert*, 826 P.2d 349 (Colo. 1992).

38.     Due to the interrelationship between the Board of Directors of the EFPD and the command organization of the Department, there is no effective means of internally disciplining the actors complained of in this Complaint or remediating the harm to the Plaintiffs.

39.     As a result, the Board of Directors has perpetuated and allowed to persist an environment in which harassment, fear, and intimidation is common-place.

*PLAINTIFFS AS EMPLOYEES AND PROTECTED PERSONS UNDER TITLE VII*

40.     The Plaintiffs are uncompensated employees of the EFPD.

41.     Courts have held, in multiple decisions, that the principle that "the question of whether someone is or is not an employee under Title VII usually turns on whether he or she received direct or indirect remuneration from the alleged employer. *Pietras v. Bd of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999). An individual may be considered an employee of a particular entity if, as a result of volunteer service, he receives benefits such as a pension, group life insurance, workers' compensation, or access to professional certifications, even if the benefits are provided by a third party. *Id.*; *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir. 1993); *Bryson Middlefield Volunteer Fire Dep't*, No. 10-3055 (6th Cir. Sept. 2, 2011); *Volling v. Antioch Rescue Squad*, No. 11 C 04920 (N.D. Ill. Dec. 4, 2012).

42.     In all respects other than the degree of pecuniary compensation, the members of the Department are subject to the strictures of a typical workplace, and — importantly, as to the EFPD — to the control exercised by an employer over paid employees.

43. Initial entry screening of volunteers/employees is conducted by the Chief of the EFPD, which includes:

a. Criminal Background Investigations

b. Driver's License Investigations

c. Interviews, formal and informal, with the Chief

44. Initial and Ongoing Professional Skill Training is conducted by the EFPD to include:

a. Basic firemanship skills based upon an in-house curriculum.

b. CPR of Health Care Professionals

c. Policy, Procedure and Protocol training

d. Emergency Medical Responder and Emergency Medical Technician training

45. The EFPD, directly or indirectly through third parties, affords benefits to its uncompensated employees, commensurate with its paid personnel. These include:

a. Worker's Compensation

b. Funeral Benefits

c. Accidental Death Benefit

d. Reimbursement of pre-approved expenses

e. Off-site travel and training costs as approved

f. Tuition credits under state programs

g. Death Gratuity eligibility under State and Federal law

h. Ability to purchase vehicle tires under the State procurement contract

i. The EFPD maintains supervision and discipline over the uncompensated

employees.

j.      A Unified Chain of Command shared by employees

k.      Monitoring of training requirements and preservation of certifications

l.      Subjected to the EFPD's disciplinary processes; to include actions for

suspension and termination.

46.     The EFPD provides all necessary and required equipment to the uncompensated

employees.

a.      Personal Protective Equipment

b.      Radios for point-to-point communication

c.      Pagers for Dispatch

d.      Uniform shirts and outerwear that may be worn off-duty

47.     Compensated employees of the EFPD, except for purely administrative, office,

and support personnel, are drawn exclusively from among the volunteers for full-time and part-

time positions.

48.     Volunteering within the EFPD is the only means by which one may be considered

for part-time or full-time employment.

49.     Courts have held that a volunteer may also be covered by the EEO statutes if the

volunteer work regularly leads to regular employment with the same entity.  In such situations,

discrimination by the employer operates to deny the employee an employment opportunity.

*Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 198 n.4 (3d Cir. 1994).

50.     Additionally, for the EFPD volunteers who have elected to enter career service,

the transition is seamless.  There is no retraining or recertification required to transition from a

9

volunteer to a compensated employee of the EFPD.

## BACKGROUND

51.    The EFPD is a Colorado special district, duly organized under the laws of the State of Colorado.

52.    The EFPD covers 267 miles square miles. Adjacent to the City of Colorado Springs, the EFPD encompasses unincorporated population centers and one business district of significance. It is an area in transition moving from being predominately rural and agricultural to being a "bedroom community" for the City of Colorado Springs.

53.    The EFPD was formed in 1984 to fund the Department that had begun operations 24 years earlier. The EFPD is a taxing authority.

54.    The EFPD is governed by a five (5) member Board of Directors. At all times relevant to the Complaint, the members of the Board of Directors were David Henley, Daniel Gillis, Gail Mayberry, Lloyd Malone, and Tammy Espinoza-Gonzalez.

55.    The EFPD has only three (3) full-time employees in operational roles, Nellie Roop (née Henley), Michael Henley, Christy Malone. It is wholly dependent upon volunteers for its labor force in the delivery of emergency services to the community it serves. This volunteer labor pool comes from the Department.

56.    The Department has 50 or more members. The Department delivers fire, rescue, HAZMAT, and emergency medical services to the community on a 24/7/365 basis.

## COUNT I
### SEXUAL HARASSMENT/UNPROFESSIONAL RELATIONSHIPS

57.    The preceding paragraphs of this Complaint are incorporated herein by reference.

58.    Michael Henley was the Fire Operations Captain for the Department, and he was

generally perceived as running the Department under the figurehead leadership of his sister, Chief Nellie Roop.

59.    From April 2012 to September 2012, Ms. LaLonde and Michael Henley engaged in a sexual and unprofessional relationship.

60.    The relationship with Michael Henley was unwelcomed by Ms. LaLonde.

61.    This relationship was known to Nellie Roop, then Chief.  Chief Roop had a duty to react to and prevent this unprofessional relationship from being maintained.

62.    When finally the relationship seemed to be terminated, Ms. LaLonde felt threatened that further disclosure of the relationship would result in harm to her interests and could result in retaliation against her common-law husband, Jordan Johnston.

63.    Subsequently, Michael Henley re-engaged Ms. LaLonde in a sexual and unprofessional relationship and continued the sexually harassing relationship that had existed in September 2012.

64.    The re-instituted and continuing relationship with Michael Henley was also unwelcomed by Plaintiff LaLonde.

65.    This continuation of the unprofessional relationship lasted sporadically from November 2012 to late May 2014, when Ms. LaLonde ended the relationship and would no longer succumb to Michael Henley's improper advances and threatening behavior.

66.    This continuation of the unprofessional relationship, instigated by Michael Henley, was similarly known to Chief Roop.  But she took no action.

67.    During the entire relationship, which was sexual in nature, Michael Henley would meet Ms. LaLonde both on and off EFPD property and engage in sexual activities best

11

categorized as sexual foreplay – i.e., kissing, hugging, nudity, fondling, etc.

68. At one instance, Michael Henley attempted to engage in sexual intercourse with Ms. LaLonde against the side of one of the EFPD's fire trucks, stored outside and to the rear of Station No. 2. Ms. LaLonde refused, and Michael Henley became agitated.

69. Throughout the illicit relationship, Ms. LaLonde felt unable to resist the sexual advances of Michael Henley because she and her husband were renting their home from the Henleys. The home, a manufactured unit, was situated in the West Ellicott Trailer Court, managed by David and Michael Henley.

70. Ms. LaLonde also feared for her safety, the safety of her children in their home, and the safety of her husband on the fire grounds.

71. Michael Henley was known to be readily willing to summarily suspend Department members for contrived and unsubstantiated allegations. Moreover, he had repeatedly threatened to tarnish and destroy Ms. LaLonde's personal and professional reputation and had made such statements to third parties.

72. Despite Ms. LaLonde's feeling threatened in terminating the unprofessional relationship with Michael Henley, she ultimately was able to do so.

73. The last acts of sexual harassment by Michael Henley occurred in late May 2014.

74. While the Plaintiffs initially brought their complaints to then Chief Roop and then to the EFPD's Board of Directors, these internal administrative remedies where ineffective and defeating.

75. As a result of the unwelcomed sexual conduct of Defendant Michael Henley, Plaintiff LaLonde suffered and continues to suffer emotional harm and distress, to an extent that

is compensable, and in an amount to be proved at trial.

## COUNT II
## HOSTILE WORK ENVIRONMENT

76.    The preceding paragraphs of this Complaint are incorporated herein by reference.

77.    Courts are required to construe Title VII broadly to prevent and remediate discrimination in the workplace.

78.    The EFPD and the Department – primarily Michael Henley with the participation and acquiescence of Nellie Roop and others – allowed and continues to allow an environment in which discrimination based upon age, sex, and disability occurs.

79.    This behavior has been pervasive, lasting over time, and not limited to an off-color remark or two that a coworker found annoying.

80.    In the summer of 2012, then Chief Roop became aware that several members of the Department were engaged in "sexting" – the practice of using cell phones to transmit sexually explicit photographs to other members.

81.    The Chief's brother, Michael Henley (then third in command of the organization as Fire Captain) was involved in the "sexting" of these images and republished sexually explicit images he received to other members of the Department.

82.    Despite then Chief Roop's awareness of this series of events and her brother's involvement, as well as other events that created an unprofessional and hostile environment for various other volunteers, no action, either reactive or proactive, was taken by the EFPD or the Department.

83.    Neither the EFPD's Board of Directors nor the Department has developed policies or procedures to deal with sexual harassment, hostile work environments, grievances, "whistle-blowing," or retaliation.

84.    Incidents have been reported to the Board of Directors for needed intervention. The problem has become significant and pervasive, has continued over time, and has not been investigated and addressed effectively enough by the organization to make the behavior stop.

85.    Various examples of the hostile climate of the EFPD include but are not limited to:

a.    "Sexting" and other sexual explicit comments and actions with the knowledge of the entire command structure, which were not effectively addressed.

b.    Commentary about the cognitive abilities of members of the Department who recently participated in a course held at the EFPD facilities, which focused on several members with learning disabilities.

c.    Intimidating personnel by threats of and actual suspensions without notice or an opportunity for a hearing – typically subscribed to an undisclosed driving complaint.

d.    Withholding earned pay, personal protective equipment, and access to reporting systems.

e.    Constructive evictions from housing that may be let to a member by West Ellicott Trailer Court, which is managed by David Henley and Michael Henley.

f.    Prior unprofessional relationships between Michael Henley and others, known and unknown, that are rumored to have transpired.

14

g.    Other unprofessional relationships between members in supervisory and subordinate positions.

h.    Suspensions for reporting illicit behavior – allegedly to facilitate investigative purposes – the effect of which creating an environment in which reporting is chilled.

86.    These examples and others are well known by the EFPD's Board of Directors and the Department command structure, neither of which has sufficiently intervened.

87.    The EFPD's and the Department's actions have resulted in personnel leaving the organization, limiting their participation, being denied attendance at training courses, and finding alternative training and education opportunities.

88.    Both of the Plaintiffs have suffered emotional harm from this hostile work environment and have suffered damages therefrom.

## COUNT III
## RETALIATION

89.    The preceding paragraphs of this Complaint are incorporated herein by reference.

90.    At the time of the last unwelcomed sexual advance by Michael Henley, the Plaintiffs were residing in a manufactured home at the West Ellicott Trailer Court in Ellicott, Colorado. The home was owned by Michael Henley. The Trailer Court is operated by David Henley and Michael Henley. The home was immediately adjacent to the home of Peter Henley, the brother of Michael Henley and the Department's training officer.

91.    The Plaintiffs had taken possession of the home in an arrangement by which they agreed to expend their own time and labor to make the property habitable in exchange for a substantial credit against rent.

15

92.     Nearly contemporaneously upon Ms. LaLonde's rejection of Michael Henley's sexual advances, a pattern and course of conduct began that resulted in the Plaintiffs suffering a constructive eviction from the residence.

93.     The Plaintiffs ultimately succumbed to the harassment and other aspects of their treatment, which resulted in their family moving from the rented home in late May 2014.

94.     Similarly, and again nearly contemporaneously with the termination of the unprofessional relationship, Defendant Michael Henley, without a legal or factual basis, a fact substantiated by subsequent review by the EFPD's Board of Directors, summarily suspended Mr. Johnston from the Department due to an allegation of improper and reckless driving of his own vehicle.

95.     The Board of Directors was informed of the sexual harassment complaints levied against Michael Henley by the Plaintiffs, along with the retaliation they had begun to experience, on 11 June 2014, at the Board of Directors' regular monthly meeting.

96.     Upon receiving the complaints, the Board of Directors went into Executive Session.

97.     Upon coming out of Executive Session, the Board of Directors' Chair urged Defendant David Henley to recuse himself from further discussions on the matter of Michael Henley's conduct.  But David Henley declined to do so.

98.     David Henley, without investigation or deliberation, asserted in a public session of the Board of Directors' meeting that the claims made by the Plaintiffs were lies and fabrications, that the Plaintiffs should be suspended or dismissed from the Department for making their

16

accusations, and that his son, Michael Henley, should not be suspended because he was clearly innocent in his view.

99.    David Henley's failure to recuse himself in the face of an obvious conflict of interest was a serious breach of governmental ethics.

100. David Henley's conduct was in violation of Article XXIX of the Colorado State Constitution in that a public employee should "…avoid conduct that is in violation of their public trust or that creates a justifiable impression among members of the public that such trust is being violated."

101.    David Henley's conduct further lent to the appearance of impropriety.

102.    The actions of David Henley clearly demonstrated a retaliatory motive and intent as to the Plaintiffs; were done contrary to the public interest; and act as a waiver of any qualified immunity if any such immunity should be asserted.

102.    After David Henley expressed his thoughts at the Board of Directors' meeting on 11 June 2014, Board Member Dan Gillis made a motion to suspend Defendant Michael Henley pending an investigation.  The motion failed.

103. Defendant David Henley then made a motion not to suspend anyone pending an investigation and to hire an investigator.  That motion failed for lack of a second.

104. By making this second motion, Defendant David Henley again clearly demonstrated a retaliatory motive and intent as to the Plaintiffs.  His actions were done contrary to the public interest, and they act as a waiver of any qualified immunity if any such immunity should be asserted.

17

105. David Henley then stated that he would not vote to suspend Michael Henley unless the complaining witness (Plaintiff LaLonde) and her spouse (Plaintiff Johnston) were suspended, too.

106. Defendant Tammy Espinoza-Gonzalez then argued for the suspension of the Plaintiffs and the suspension of Michael Henley, with pay, pending an investigation, and to hire an investigator.  That Motion received a second and was carried with Dan Gillis abstaining. (Director Gillis and the entire Board of Directors had been for years under the mistaken belief that the Chair of the Board may only vote in the event of a tie.)

107. Defendant Tammy Espinoza-Gonzalez's motion was retaliatory in nature and meant to punish the Plaintiffs for bringing a serious and egregious accusation to the Board of Directors, while not impacting Defendant Michael Henley financially or in any adverse manner.

108. Essentially, the result of her motion was to punish the victims and to reward the alleged harasser with a two-month paid vacation.

109. Tammy Espinoza-Gonzalez demonstrated a retaliatory motive and intent as to the Plaintiffs; her motion was made contrary to the public interest, and it acts as a waiver of any qualified immunity if any such immunity should be asserted.

110. As a result, Plaintiffs LaLonde and Johnston were suspended from their activities with the EFPD and the Department.  Defendant Michael Henley was suspended, with pay, from both his volunteer and professional duties for the Department and the EFPD.

111. Before their suspension, the Plaintiffs were to attend, the next week, an EFPD-sponsored Emergency Medical Technician Course at the EFPD's fire station.  Despite a request

that they be permitted to attend this valuable training, the Board of Directors declined them permission.

112. The decision was asserted and advanced by Defendant Tammy Espinoza-Gonzalez, and it is further demonstration of her retaliatory intent as to the Plaintiffs.

113. As a result of being unable to attend this course, which normally costs between $800 and $1200 to attend, Ms. Lalonde lost a valuable training opportunity that may have qualified her for greater pay and responsibilities in the health care field in which she was employed.

114. As a result of being unable to attend this course, which normally costs between $800 and $1200 to attend, the Mr. Johnston lost a valuable training opportunity that may have qualified him for part-time or career employment with an EMS provider.

115. The Board of Directors then had an investigation conducted by David Spencer Investigations. The investigation was not commenced until late July 2014 and was not reported back to the Board of Directors until its August 2014 meeting.

116. For approximately eight weeks, Michael Henley was on administrative leave with pay; while the Plaintiffs were unable to even attend a class on the EFPD's grounds.

117. Upon the EFPD receiving the report of the investigation – which generally substantiated the Ms. LaLonde's and Mr. Johnston's allegations – the Board of Directors directed the Chief to take appropriate disciplinary action against her brother, Michael Henley, and report back to the Board of Directors at the September 2014 Board meeting.

118. No action by the Chief was reported back to the Board of Directors, and if any action had occurred, it was ineffective and actually condoned the actions of the Chief's brother – either directly or indirectly.

19

119. The Plaintiffs were returned to active status in the Department after the August 2014 Board meeting.

120. Since their return to duty, Plaintiffs Johnston and LaLonde were and have been shunned by their colleagues.

121. There were significant delays in returning personal protective equipment (PPE) to Ms. LaLonde.  Mr. Johnston was delayed substantially in being re-issued his PPE and has yet to receive his medical response equipment that he had been issued prior to the suspension.

122. Without proper PPE the Plaintiffs' suspensions were *de facto* continued as they could not safely and prudently report to calls for emergencies without proper PPE.

123. Due to the emotional strains and pressures this "shunning" placed on Ms. LaLonde, she has relocated to Texas until there is a final resolution of this matter.  Her relocation has resulted in economic loss.

124. Both Plaintiffs have suffered emotion harm and injury due to the unlawful and retaliatory actions of the Defendants.

*Count IV*
*Extreme and Outrageous Conduct*

125. The preceding paragraphs of this Complaint are incorporated herein by reference.

126. Defendant Michael Henley's conduct demonstrated a history of malicious behavior directed against the Plaintiffs.

127. This pattern of conduct continues to the present day.  The most recent example being Michael Henley's assigning Mr. Johnston on 24 November 2015 to a fire assignment that was highly dangerous, imprudent, and contrary to all generally accepted firefighting practices. Furthermore, Michael Henley maintained Mr. Johnson on the assignment despite repeatedly

20

being directed by the Incident Commander to withdraw Mr. Johnston, which resulted in Mr. Johnston being "burned-over" at the head of a rapidly developing urban interface fire.  Mr. Johnston narrowly escaped serious injury or death from the peril Michael Henley created.

128.  Michael Henley's conduct was and is so outrageous in character and so extreme in degree that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

129. Michael Henley's conduct was conducted either directly through his own actions, through the actions of others at his direction or through the instigation and sanctioning of the acts and actions of third parties.

130.  Michael Henley's actions were done recklessly and /or with the intent to cause harm to Plaintiffs.

131.  Michael Henley has caused Plaintiffs severe emotional distress and other harm.

132.  Michael Henley is liable to the Plaintiffs for his extreme and outrageous conduct in an amount to be proved at trial.

**WHEREFORE,** the Plaintiffs pray that the Court enters Judgment against the Defendants as follows:

1.    For damages as determined by a jury in this cause;

2.    For exemplary damages as determined by a jury in this cause;

3.    For interest as provided by law;

4.    For expert witness fees and other costs incurred as a result of this action;

5.    For reasonable attorney fees; and,

6.    For such other and further relief as this Court deems just, equitable and proper.

**JURY DEMAND**

Plaintiffs demand all matters triable by a jury in this case be so tried.

Respectfully submitted,

Daniel B. Miller
*Admitted to the U.S. District Court for District of Colorado; Colorado practice temporarily authorized pending admission under C.R.C.P. 205.6*
Attorney for the Plaintiffs
Maceau Law
3225 Templeton Gap Road, Suite 205
Colorado Springs, CO  80907
Office: 719.633.2222
Fax:  719.577.4648
E-mail:dan@maceaulaw.com

<Balance of this Page Intentionally Left Blank.>

State of Colorado        )
                         : ss.
County of El Paso        )

## VERIFICATION

Jordan Johnston, being of lawful age and first duly sworn upon her oath, did depose and state that I read the foregoing Complaint, know it to be true and accurate, and have directed my attorney that the same be filed in the Court and summons served upon the Defendants.

Dated this __9__ day of February, 2016.

Jordan Johnston

Subscribed and sworn to before my by Jordan Johnston this __9__ day of February, 2016.

Notary Public

My commission expires on ___10|14|19___.

SHANNON MARIE BUTLER
Notary Public
State of Colorado
20154040447
My Commission Expires Oct. 14, 2019

State of Texas          )
                        : ss.
County of Denton        )

## VERIFICATION

Brittany LaLonde, being of lawful age and first duly sworn upon her oath, did depose and state that I read the foregoing Complaint, know it to be true and accurate, and have directed my attorney that the same be filed in the Court and summons served upon the Defendants.

Dated this 9 day of February, 2016.

Brittany LaLonde

Subscribed and sworn to before my by Brittany LaLonde this 9 day of February, 2016.

Notary Public

My commission expires on 05/14/18       .



JUAN M SALINAS
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 5/14/2018
NOTARY ID 12981944-6